# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENDRA K. RUIZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-05-295-FHS-SPS |

## REPORT AND RECOMMENDATION

The claimant Kendra K. Ruiz requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and "the substantiality of the evidence must take into account whether the

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform her past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account her age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

**Claimant's Background**

The claimant was born on April 27, 1967, and was 37 years old at the time of the administrative hearing. She has a high school education and previously worked as a waitress, cook, bakery worker, and factory supervisor. The claimant alleges she has been unable to work since July 2, 2002, because of headaches, problems with her head, neck, and back, and muscle spasms in her legs and shoulders.

**Procedural History**

The claimant filed an application for supplemental security income benefits under Title XVI (42 U.S.C. § 1381 *et seq*.) on January 3, 2003, and an application for disability insurance benefits under Title II (42 U.S.C. § 401 *et seq*.) on June 12, 2003. Both applications were denied. After a hearing on both claims on August 26, 2004, ALJ Gene M. Kelly found the claimant was not disabled in a decision dated February 7, 2005. The Appeals Council denied review, so the ALJ's decision represents the final decision of the Commissioner for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, the claimant could lift and/or carry ten pounds frequently and 20 pounds occasionally, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday

with normal breaks. The claimant had additional limitations of only occasional stooping and would need to change position from time to time (Tr. 17). The ALJ concluded that although the claimant could not perform her past relevant work, she was nevertheless not disabled because she could perform other jobs in the regional and national economies, *e. g.*, arcade attendant, cafeteria attendant, mail clerk, hand packager, cashier, assembly, information clerk, and inspector (Tr. 19).

## Review

The claimant's sole contention is that the ALJ developed an RFC that did not include all of her physical limitations.[2] The claimant argues that the ALJ ignored restrictions placed on her by treating physician Dr. Tracy Thompson, D.O., and failed to properly explain why these restrictions were not included in the RFC. The undersigned Magistrate Judge finds this argument persuasive.

The record reveals that the claimant suffered an on-the-job injury in June 2001, wherein she slipped, jerking her neck, and landed on the concrete floor. X rays of the claimant's lumbosacral spine from July 2002 revealed the claimant had levoscoliosis and spina bifida occulta (Tr. 143). An MRI from December 2002 indicated desiccated disc L3-4 and L4-5, bulging discs L3-4 and L4-5 without neuroforaminal encroachment, and possible extruded disc T11-12 (Tr. 151-52). Upon examination in February 2004, Dr. Thompson

---

[2] The claimant alleged the RFC failed to include "all of claimant's physical and mental limitations" and that the ALJ failed to properly analyze the claimant's credibility. *See* Docket No. 8, p. 6. The claimant, however, presented no argument with regard to these allegations, so the undersigned Magistrate Judge will only address the claimant's argument with respect to her physical limitations.

observed the claimant walk with a limp, her motor function was decreased, and she was barely able to perform heel/toe walking. The claimant was prescribed Celebrex and Flexeril (Tr. 185). Dr. Thompson ordered X rays of the claimant's lumbar spine, which revealed levoscoliosis, spina bifida occulta, and degenerative changes at L4 (Tr. 182). At her next visit, the claimant continued to complain of back and neck pain. Her neck exhibited tenderness, muscle tightness, and decreased range of motion, while her lumbar spine also showed muscle tightness and decreased range of motion. Dr. Thompson assessed cervical tenderness and low back tenderness and prescribed the claimant medication (Tr. 183).

In August 2004, Dr. Thompson completed a medical source statement regarding the claimant's physical limitations. The claimant could only lift less than five pounds; stand, walk, and/or sit for a total of one hour in an eight-hour workday; and was required to lie down during the workday to manage pain. The claimant was limited in push and/or pull (and noted to be very limited with the feet) and could never climb, stoop, kneel, crouch, or crawl. She could occasionally balance and frequently reach, handle, finger, and feel, but because of her problems with her back and legs, she was considered a hazard to herself and others. Dr. Thompson noted the claimant was limited in what she could do because of her back pain and problems with lower extremity radiculopathy and that the claimant's limitations were supported by X rays showing levoscoliosis, spina bifida occulta, and degenerative changes at L4 of the lumbar spine (Tr. 179-80).

The Commissioner argues that Dr. Thompson was not the claimant's treating physician, but the record reflects that the ALJ considered Dr. Thompson to be one. The ALJ

mentioned the assessment completed by Dr. Thompson and noted that the opinion of a treating physician was entitled to special significance, *i. e.*, controlling weight, "when supported by objective medical evidence and consistent with other substantial evidence of record[.]" (Tr. 18-19). *See, e. g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (finding treating physician's opinion was entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record."), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. He accepted Dr. Thompson's diagnosis of degenerative disc disease, but he did not give "much weight" to the limitations assessed by Dr. Thompson because: (i) there were no objective signs of the claimant's subjective complaints; and, (ii) the claimant's diagnosis and treatment were based on her complaints. These reasons, however, were not supported by the evidence. First, there was *some* objective evidence supporting the claimant's complaints, *e. g.*, X rays showed levoscoliosis, spina bifida occulta, and degenerative changes of the lumbar spine, and examination revealed decreased range of motion and problems walking. Second, Dr. Thompson gave no indication the conclusions reached on the assessment were based solely on the subjective complaints of the claimant, and it was error for the ALJ to assume so. *See Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints[.] . . . The ALJ had no legal nor evidentiary basis for [this] finding. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints[.] . . . 'In choosing to reject the

treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [quotations omitted] [emphasis in original].

Assuming *arguendo* that the ALJ was correct in not affording controlling weight to Dr. Thompson's assessment, he still was required to determine the proper weight to give it by analyzing *all of the factors* set forth in 20 C.F.R. §§ 404.1527, 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527 [and § 416.927].'"), *quoting Watkins*, 350 F.3d at 1300 [quotation omitted]. Those factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Further, in order to reject Dr. Thompson's assessment entirely, the ALJ was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301

[quotations omitted], so it was "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300. The ALJ failed to do any of this.

Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of Dr. Thompson's assessment. On remand, the ALJ should reconsider Dr. Thompson's assessment in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's RFC and ultimately her ability to work.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Parties are herewith given ten (10) days from the date of this service to file with the Court Clerk any objections with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 14th day of May, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**